# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN MONTECALVO,<br>Plaintiff,<br>    v.<br>NORTH FRANKLIN TOWNSHIP,<br>WASHINGTON COUNTY, PA, OFFICER<br>RONALD FOX, CHIEF, IRMA TATANO,<br>MADONNA TATANO, ANGELO TATANO,<br>and CATHY VOGEL,<br>Defendants. | Civil Action No. 18-1394<br>Senior Judge Nora Barry Fischer |

## **MEMORANDUM OPINION**

### I.    INTRODUCTION

In his Second Amended Complaint, *pro se* Plaintiff Brian Montecalvo ("Montecalvo") has set forth six separate causes of action against the Defendants largely arising from a landlord tenant dispute and resulting state court litigation which the parties appeared to have resolved amicably via a settlement. (Docket No. 34). Most of Montecalvo's claims assert state law theories against fellow Pennsylvania citizens Defendants Irma Tatano, Angelo Tatano, Madonna Tatano, and Cathy Vogel, except for two § 1983 claims against Defendants North Franklin Township, Washington County, PA ("North Franklin Township") and Officer Ronald Fox, Chief, ("Chief Fox") alleging malicious prosecution in violation of the Fourth Amendment, fabrication of evidence under the Fourteenth Amendment and First Amendment retaliation related to the filing of a harassment citation against Montecalvo. (*Id*. at Counts I, IV). The parties have flooded the Court with various motions seeking all types of relief. (*See* Docket Nos. 33; 36; 38; 41; 43; 45; 47; 68; 69; 70; 79; 81; 94; 99). However, the Court focuses on the motion to dismiss filed by North Franklin Township and Chief Fox and Plaintiff's opposition thereto which pertain to the only claims over which this Court has original subject matter jurisdiction. (*See* Docket Nos. 41; 42; 51; 52; 66; 67; 70; 77; 78). After careful consideration of the parties' positions, and for the

following reasons, North Franklin Township and Chief Fox's motion to dismiss [41] will be granted, Plaintiff's § 1983 claims against North Franklin Township and Chief Fox will be dismissed, with prejudice, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims against the non-diverse Defendants under 28 U.S.C. § 1367(c)(1) and deny the rest of the parties' motions, as moot.

## II. BACKGROUND

### A. *Relevant Facts*

Despite the voluminous submissions by the parties and their various disagreements,[1] the basic facts underlying the dispute between Montecalvo, North Franklin Township and Chief Fox are straightforward. (Docket No. 34-2). Montecalvo rented a townhouse in Washington County from Defendants Irma and Angelo Tatano for more than a decade. (*Id.*). Defendant Cathy Vogel ("Vogel") lived in the same building for at least part of this time. The landlord-tenant relationship between Montecalvo and the Tatanos deteriorated. The Tatanos then engaged Defendant Madonna Tatanto to represent them and she advised Montecalvo that they wanted to terminate the landlord-tenant relationship in November of 2014. (*Id.*). Montecalvo and the Tatanos became embroiled in litigation in Washington County, with Montecalvo representing himself and Madonna Tatano representing the Tatanos. Montecalvo wanted Vogel to be a witness on his behalf during this litigation but she apparently avoided his efforts to participate in the discovery process. (*Id.*). The cases were set for a trial on November 13, 2017. (*Id.*).

Prior to the trial, on October 6, 2017, Vogel and Madonna Tatano filed a police report with Chief Fox. After meeting with Vogel and Madonna Tatano, Chief Fox filed a non-traffic

---

[1] The Court notes that Montecalvo has made a number of allegations against Vogel and the Tatanos that they deem scandalous and to which they have made objection. Since those allegations are not relevant to the disposition of the federal claims in this case, and it is unnecessary for the Court to rule on their motions to strike them, the Court simply declines to restate those allegations in its summary of the facts.

citation/summons against Montecalvo charging him with committing the summary offense of harassment in violation of 18 Pa.C.S. § 2709(a)(3). The description of the nature of the offense in the citation states succinctly that Montecalvo "has engaged in a course of conduct to harass or annoy Cathy Vogel namely disparaging remarks and calls to third parties, family members and by visiting and driving through her home complex which served no legitimate purpose." (Docket No. 34-1, Pl. Ex. "A"). Montecalvo claims that both Vogel and Madonna Tatano lied to Chief Fox about the circumstances when they told him that Montecalvo:

> harassed Cathy Vogel by giving a third party person, (Matt Vogel), a cease and desist notice to stop Cathy Vogel's harassment and invasion of privacy towards Brian Montecalvo. Cathy Vogel also made false statements that Brian Montecalvo had harassed Cathy Vogel by driving out of the parking lot of her apartment building after being assaulted by Cathy Vogel in an attempt to serve Cathy Vogel with a subpoena. This complaint was instigated without probably (sic) cause and was malicious.

(Docket No. 34 at ¶¶ 7, 8). He further asserts that Chief Fox "knows that serving a subpoena and a cease and desist notice is not illegal" and that he "presented no evidence of wrongdoing for this complaint." (*Id.* at ¶ 9). He continues that this action violated his freedom of speech rights because Chief Fox stated that Montecalvo "did not have freedom of speech to protect himself verbally or in writing or in the court system" and that Chief Fox "initiated a criminal complaint against Brian Montecalvo for issuing a verbal cease and desist notice to stop any and all harm from Defendant: Cathy Vogel and her family and for delivering a subpoena." (*Id.* at ¶ 67). He makes nearly identical allegations against North Franklin Township. (*Id.* at ¶ 10; 68). At the same time, Montecalvo alleges that Chief Fox and North Franklin Township ignored all of the complaints that he made about the Tatanos and refused to arrest or prosecute them at his behest. (*Id.* at ¶¶ 71; 722).

Approximately two weeks after the citation was filed, on October 19, 2017, Montecalvo, the Tatanos and Madonna Tatano entered into a Settlement Agreement and Mutual Release of All Claims on October 19, 2017 wherein they apparently agreed to resolve their lawsuits and a related appeal in advance of the November 13, 2017 trial date. (Docket No. 34-2). This agreement specifically references the criminal complaint in a provision titled "Ancillary Actions" wherein they acknowledge that additional litigation may ensue between Montecalvo and non-parties to the agreement but they would provide testimony as witnesses. (*Id*.).

Returning to the criminal complaint, Montecalvo admits that he was served with a summons and was required to appear at a local magistrate office in defense of same. (Docket Nos. 66; 67). Ultimately, the charge was dismissed. (Docket No. 34 at ¶¶ 7-8; 10). Although the parties disagree about the disposition, with Defendants contending that the case was dismissed after Montecalvo agreed not to have any contact with Vogel for 90 days, the Court accepts Plaintiff's version of the events for purposes of this motion, i.e., that he was found not guilty at a summary trial. (*See* Docket Nos. 66; 67).

B. *Relevant Procedural History*

Montecalvo initiated this case by filing his Complaint against all of the Defendants on October 18, 2018. (Docket No. 1). Prior to the filing of any responsive pleadings, Montecalvo filed an Amended Complaint on November 6, 2018. (Docket No. 9). Vogel filed a pro se Answer to the Amended Complaint on December 10, 2018. (Docket No. 18). Plaintiff then attempted to file a pleading which the Court construed as a Second Amended Complaint and struck from the docket because it did not comply with Rule 15(a)(2) of the Federal Rules of Civil Procedure. (Docket Nos. 22; 23). The Court later granted Plaintiff's motion to file a Second Amended

Complaint, which he did on January 23, 2019 and it remains the operative pleading for purposes of this Opinion. (Docket No. 34).

Relevant here, North Franklin Township and Chief Fox filed a motion to dismiss or in the alternative, motion for summary judgment, on February 20, 2019. (Docket Nos. 41; 42). After receiving leave of court to file nunc pro tunc, they submitted a concise statement of material facts and appendix two days later on February 22, 2019. (Docket Nos. 51; 52). Montecalvo filed his Objections and Brief in Opposition to their motion on April 15, 2019 along with a cursory motion to amend complaint which does not include a proposed third amended complaint. (Docket Nos. 66; 67; 70). North Franklin Township and Chief Fox filed their Reply and opposition to the motion to amend on April 29, 2019. (Docket Nos. 77; 78). The motion to dismiss is now fully briefed and ripe for disposition.

III. LEGAL STANDARD

As Plaintiff is proceeding pro se, the factual allegations in his complaint are to be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, a plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Although the Court must accept the allegations in the complaint as true, "'[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556–57. Additionally, while courts deciding motions to dismiss "generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record," they may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.; see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third, the court should assume the veracity of all well-pled factual allegations and then "'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

6

IV. DISCUSSION

At the outset, Section 1983 serves as a means of vindicating violations of federal constitutional and statutory rights and provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law….

42 U.S.C. § 1983; *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). A plaintiff cannot obtain redress under § 1983 without establishing an underlying violation of a federal constitutional or statutory right. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119-20, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005). Here, Montecalvo asserts that his rights under the Fourth, Fourteenth and First Amendments were allegedly violated.

North Franklin Township and Chief Fox raise a number of different defenses in their motion to dismiss in response to Montecalvo's § 1983 malicious prosecution, fabrication of evidence and First Amendment retaliation claims against them. (Docket Nos. 41; 42). Montecalvo naturally contests all bases for dismissal. (Docket Nos. 51; 52). Having reviewed the parties' arguments in light of the prevailing law and standard of review, affording liberal construction to Montecalvo's pleadings due to his pro se status, the Court finds that his § 1983 claims are subject to dismissal for failure to state a plausible claim for relief.

A. *Qualified Immunity*

Initially, Chief Fox has raised the defense of qualified immunity, which attaches "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. ——, 138 S.Ct. 1148 (2018)

(*per curiam*) (citations omitted); *Bland v. City of Newark*, No. 17-2228, 2018 WL 3863378 (3d Cir. Aug. 15, 2018); *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015); *El v. City of Pittsburgh*, No. CV 15-834, 2018 WL 3707420, at \*9 (W.D. Pa. Aug. 3, 2018). The Supreme Court "stress[es] the importance of resolving immunity questions at the earliest possible stage in litigation" because the immunity is "an immunity from suit" that is "effectively lost if a case is erroneously permitted to go to trial." *Hines v. Neuhaus*, No. CV 17-1387, 2018 WL 1768047, at \*3 (E.D. Pa. Apr. 11, 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

To resolve questions of qualified immunity, "courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *Bland*, 2018 WL 3863378, at \*10 (citing *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016)). A court may evaluate these two prongs "in the order [it] deem[s] most appropriate for the particular case before [it]." *Santini*, 795 F.3d at 418 (citation omitted).

Montecalvo initially claims that he was subject to malicious prosecution by Chief Fox's initiation of the allegedly false criminal complaint against him which relied upon the lies told to him by Vogel and Madonna Tatano and that the citation was issued without probable cause. (Docket No. 34). Broadly construed, he also pleads that Chief Fox presented fabricated evidence at the summary trial in violation of his rights under the Fourteenth Amendment. (*Id.*). Montecalvo next asserts that Chief Fox violated his First Amendment rights by filing the citation against him for attempting to serve a subpoena on Vogel. (Docket No. 34). Having considered these allegations, in this Court's estimation, qualified immunity shields Chief Fox from liability in this matter for several reasons.

8

First, Montecalvo has failed to state plausible claims for relief for malicious prosecution under the Fourth Amendment or fabrication of evidence under the Fourteenth Amendment because he has not alleged that he was deprived of a liberty interest worthy of Constitutional protection. As this Court has held previously,

> "[P]rosecution without probable cause is not, in and of itself, a constitutional tort" actionable under § 1983. *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). There must instead be some "constitutional peg on which to hang such" a claim. *Albright*, 510 U.S. at 270 n.4, 114 S.Ct. 807. Typically, that "peg" is the Fourth Amendment, in which case a plaintiff must establish that he suffered a deprivation of his "liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). Thus, in order to state a claim for malicious prosecution, a plaintiff must demonstrate: (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) defendants acted maliciously or for a purpose other than bringing plaintiff to justice; and (5) plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).

*Pristas v. Esper*, No. CV 17-1056, 2018 WL 1427089, at *11 (W.D. Pa. Mar. 22, 2018). Regarding the last element, a plaintiff who is issued citations for summary offenses, without being arrested or taken into custody, and is not subject to onerous types of pretrial, non-custodial restrictions, and is merely required to attend a summary trial has not been seized. *See DiBella*, 407 F.3d at 603. This Court has also determined that a fabrication of evidence claim similarly requires a plaintiff to plead that he was subject to this type of deprivation of liberty. *See Pazcini v. Miller et al.*, Civ. A. No. 17-117, 2017 WL 2418688, (W.D. Pa. Jun. 5, 2017).

Here, Montecalvo pleads only that he was required to appear at a summary trial and that he was declared "not guilty" at the conclusion of the proceeding. (Docket No. 34). He admits in

9

his response that although an arrest warrant was issued, it was retracted and further states that he was "almost arrested." (Docket No. 67 at 7 ("11/15/17: a bench warrant for the arrest of Plaintiff: Brian Montecalvo was issued, then retracted.") at 11). He has not alleged that he was subject to any other onerous pretrial restrictions which courts have recognized constitute a deprivation of his liberty interest. (Docket No. 34). Rather, the other examples he provides are clearly insufficient, e.g., his mind was restrained; he was sued while acting as his own attorney; he had to hire an attorney to represent him at the summary trial; and, Chief Fox refused to arrest the other Defendants at his behest. (*Id*. at 11). All told, the Court finds that Montecalvo has failed to sufficiently plead that he was deprived of a liberty interest and his malicious prosecution and fabrication of evidence claims against Chief Fox are subject to dismissal for failure to state plausible claims upon which relief may be granted, entitling him to qualified immunity from the lawsuit. See *Pazcini*, 2017 WL 2418688.

Second, insofar as Montecalvo's Second Amended Complaint is broadly construed as alleging some type of due process violation for the failure of Chief Fox or anyone else to arrest or prosecute the Defendants, any such claims are clearly not cognizable and subject to dismissal. *See e.g., Sanders v. Downs*, 420 F. App'x. 175, 180 (3d Cir. 2011) (citations omitted) ("there is no constitutional right to the investigation or prosecution of another."). Similarly, Montecalvo, a white male, who was 48-years old at the time of this incident, has not stated an equal protection claim as he is not a member of a protected class and is not similarly situated to the senior citizens in Washington County about whom he complains receive preferential treatment by police. *See e.g., Cole v. Encapera*, 758 F. App'x 252, 256 (3d Cir. 2018) (since plaintiff was not a member of a protected class, he must show that he is similar in all relevant respects to individuals who were treated differently). Chief Fox is likewise entitled to qualified immunity from these claims.

Third, Montecalvo has failed to demonstrate that he had a clearly established right on October 6, 2017 that it was not a violation of 18 Pa.C.S. § 2709(a)(3) for him to have contacted a subpoenaed witness, Vogel, and to "issue" her and her family members verbal "cease and desist" notices prior to the scheduled trial while he was representing himself pro se in the state cases. (*See* Docket No. 34).

> In order to determine if a right is clearly established, courts "look at the circumstances that confronted [the officer] and ... compare [them to] the circumstances present in those cases [in] which [courts] have concluded that there was an absence of probable cause." *Paff v. Kaltenbach*, 204 F.3d 425, 437 (3d Cir. 2000). Only "[i]f there are cases that would make it 'apparent' to a reasonable officer in [the defendant's] position that probable cause was lacking, [is] qualified immunity ... not available." *Id*. (citation omitted). It is not sufficient that the right be established in a general sense; instead, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

*Vanderklok v. United States*, No. 18-2151, 2019 WL 2451051, at *2 (3d Cir. June 12, 2019). "Whether any particular set of facts ... [establishes] probable cause requires an examination of the elements of the crime at issue." *Id*. at *3 (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005)). Under section 2709(a)(3),

> [a] person may be guilty of harassment "when, with intent to harass, annoy or alarm another, the person ... engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]" 18 Pa.C.S. § 2709(a)(3). The statute defines "course of conduct" as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." *Id*. at § 2709(f). Furthermore, [the Superior Court of Pennsylvania] has held that a defendant's "intent to harass may be inferred from the totality of the circumstances" and "[a] course of conduct ... can be based on words alone." *Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa. Super. 2002) (citations omitted). [However], the statute also explicitly provides: "This section shall not apply to constitutionally protected activity." 18 Pa.C.S. § 2709(e).

11

*Comm. v. Harmer*, 2017 WL 2992391, at *3 (Pa. Super. Ct. Jul. 14, 2017). The factual circumstances reported in the citation are that Montecalvo "engaged in a course of conduct to harass or annoy Cathy Vogel namely disparaging remarks and calls to third parties, family members and by visiting and driving through her home complex which served no legitimate purpose." (Docket No. 34-1, Pl. Ex. "A"). As noted, Montecalvo admits that he contacted Vogel and her family members and issued them "verbal" cease and desist notices. He claims that he was serving a subpoena when he drove through the apartment parking lot and that all of his actions were privileged because he was representing himself.

Regardless of the slight disputes in the facts, Montecalvo has not pointed the Court to any controlling authority establishing that the right he seeks to enforce here was clearly established on the day that the citation was filed and this Court's independent research has not located any such authority. To the contrary, the most relevant precedent this Court has identified is a recent decision by the Superior Court of Pennsylvania which states succinctly that "[t]here is a dearth of caselaw interpreting what constitutes 'constitutionally protected activity' as to avoid prosecution for harassment" under § 2709(a)(3). *Comm. v. Harmer*, 2017 WL 2992391, at *3 (Pa. Super. Ct. Jul. 14, 2017). The cases surveyed by the Court in *Harmer* are not akin to this one. Needless to say, a "dearth of caselaw" does not suffice to meet the burden to show a "robust consensus of cases of persuasive authority" that place the answer to this question beyond debate. *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018) (quoting *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016)). Hence, this Court must conclude that Chief Fox is entitled to qualified immunity from Montecalvo's malicious prosecution and First Amendment retaliation claims.

Fourth, Montecalvo's claims for both malicious prosecution and First Amendment retaliatory prosecution fail to state plausible claims for relief regarding the probable cause element shared by those causes of action. Again, it is Montecalvo's burden to plead sufficient facts establishing that probable cause was lacking under the totality of the circumstances and he has not done so here.

> Probable cause exists if there is a "fair probability" that the person committed the crime at issue. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016). Put differently, probable cause is present "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Importantly, "the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility ... were, in retrospect, accurate." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005). Thus, probable cause is "[f]ar from demanding proof of guilt beyond a reasonable doubt." *Dempsey*, 834 F.3d at 467.
>
> In § 1983 cases, probable cause is generally a question left for the jury, but courts may conclude that probable cause existed as a matter of law if "the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding." *Id.* (alteration in original) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

*Turkos v. Dupont Borough*, 721 F. App'x 208, 212 (3d Cir. 2018).

It is this Court's opinion that the totality of the circumstances of this case, viewed in a light most favorably to Montecalvo, demonstrate that Chief Fox had probable cause to issue the citation. To this end, Montecalvo claims that the citation was issued upon alleged lies told by Vogel and Madonna Tatano and that Chief Fox failed to investigate them. (Docket No. 34). He also pleads that Chief Fox knew that the parties were involved in litigation; that Montecalvo was representing himself; that Chief Fox knew that it was not illegal to serve a subpoena; and that he was found not guilty of the violation. (Docket No. 34). However, neither conflicts in evidence nor the fact that

13

an officer is ultimately wrong undermine an initial finding of probable cause, *see Wright*, 409 F.3d at 603, and the Court believes that the facts set forth in the citation are sufficient to show probable cause that Montecalvo violated the statute.

For all of these reasons, the Court finds that Chief Fox is entitled to qualified immunity from the claims against him and they will be dismissed under Rule 12(b)(6).

### B.  *Monell* Liability

With respect to the claims against North Franklin Township, "[i]n determining whether a municipality can be held liable under § 1983, courts must ask '(1) whether [the] plaintiff's harm was caused by a constitutional violation, and if so, (2) whether the city is responsible for that violation.'" *Turkos v. Dupont Borough*, 721 F. App'x 208, 214 (3d Cir. 2018) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1149–50 (3d Cir. 1995), *which quoted Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).  As noted in the preceding section of this Memorandum Opinion, Montecalvo has failed to sufficiently plead any violation of his Constitutional rights.  *See* § IV.A, *supra*.  Accordingly, Montecalvo's *Monell* claim against North Franklin must be dismissed as well.

### C.  *Leave to Amend*

The Court's next inquiries are whether the dismissal of the federal claims in Plaintiffs' Second Amended Complaint should be with prejudice or without prejudice and if the Court should grant or deny Montecalvo's motion to amend his complaint a third time.  (Docket No. 70).  The United States Court of Appeals for the Third Circuit has held that in civil rights cases "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245; *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d Cir. 2002). "Leave to amend may be

14

denied for futility if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 841 (3d Cir. 2014) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) *and citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ). Here, the Court finds that any further amendment of Montecalvo's claims would be futile given the Court's analysis of the federal claims set forth above, including Chief Fox's well pleaded defense of qualified immunity and the failure to sufficiently plead a *Monell* claim against Franklin Township. In addition, he has already submitted two amended pleadings in this matter and despite filing a cursory motion for leave to amend, he has not supplied this Court with a proposed pleading such that leave to amend may be denied on these grounds as well. *See, e.g., McWreath v. Range Res.–Appalachia, LLC*, 645 F. App'x. 190, 196 (3d Cir. 2016) ("[T]he failure to submit a draft amended complaint 'is fatal to a request for leave to amend.'") (quoting *Zizic*, 728 F.3d at 243). Accordingly, the Court will deny Montecalvo's motion to amend and dismiss his federal claims, with prejudice.

  *D. Remaining State Law Claims*

Finally, Montecalvo has also set forth four state law causes of action against non-diverse Defendants Vogel and Irma, Angelo, and Madonna Tatano which the Court has yet to address. (Docket No. 34). As all federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over these remaining claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction ... if the district court has dismissed all claims over which it has original jurisdiction"); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent

15

jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). This decision is clearly in the interests of judicial economy because the state law claims are the subject of numerous motions which remain pending before this Court and also relate to a settlement between Montecalvo and the Tatanos which was reached in Washington County. (*See* Docket Nos. 33; 36; 38; 43; 45; 47; 68; 69; 79; 81; 94; 99).

V. CONCLUSION

Based on the foregoing, North Franklin Township and Chief Fox's motion [41] is granted, in part, and denied, in part, as the Court grants the Rule 12(b)(6) motion to dismiss and denies the corresponding motion for summary judgment, as moot. Montecalvo's motion seeking leave to amend his complaint a third time [70] is denied, as any amendment of his federal claims against North Franklin Township and Chief Fox would be futile. As there are no other federal claims in this action, the Court declines to exercise supplemental jurisdiction over the remaining claims in Montecalvo's Second Amended Complaint and such claims are dismissed, without prejudice, to his pursuit of them in an appropriate state tribunal. In light of such disposition, all of the remaining motions are denied, as moot. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior District Judge

Dated: June 24, 2019

cc/ecf: All counsel of record.

Brian Montecalvo
bmonteclegal@mail.com
and
220 Parker Street
Houston, PA 15342
(Via Regular Mail)

Cathy Vogel
1880 West Chestnut Street
Apt. #130
Washington, PA 15301
(Via Regular Mail)